JUSTICE WEBER
dissents as follows:
I dissent from the majority opinion which awards damages, costs and fees against Ford New Holland for violations of §§ 30-11-802 and 803, MCA.
I will set forth the essential terms of the two contracts which are pivotal to the decision. The first is the Dealer Sales and Services Agreement (herein called Dealer Agreement) dated November 2,1983 between Versatile Farm Equipment Corporation (herein Versatile) and Van’s Tractor, Inc. (herein Van’s Tractor). The non-exclusive right *215 to sell products of Versatile granted to Van’s Tractor is contained in the following paragraph:
1.1 The Company hereby grants to the Dealer the non-exclusive right to sell the products of the Company as hereinafter defined. ... All transactions between the Company and the Dealer shall be governed by this Agreement unless the parties specifically agree otherwise in writing.
I emphasize that Van’s Tractor was given a non-exclusive right to sell Versatile products and that all transactions between Van’s Tractor and Versatile were to be governed by the Dealer Agreement. While the Dealer Agreement did provide that the parties could otherwise agree in writing, there is no such agreement in the record. As a result, the transactions between Van’s Tractor and Versatile were governed by the Dealer Agreement.
The products covered by the Dealer Agreement are as follows:
2.1 Products covered by this Agreement are all those items of agricultural tractors, machines, and equipment ... listed in a current price list... issued by the Company [Versatile] from time to time together with all attachments and accessories thereto ... Each successive Machinery Price List and Parts Price List when issued is deemed to be a part of this Agreement....
Under this paragraph the products covered by the Dealer Agreement were determined by Versatile from time to time as it issued current price lists. Under the agreement Versatile was given the right to eliminate any portion of its equipment lines without the right to object on the part of Van’s Tractor. As a result Versatile had the power to eliminate the Noble line of equipment if it chose. Such elimination is a factor relied upon in the majority opinion without a consideration of the power to eliminate the Noble line of equipment which Van’s Tractor granted to Versatile.
Versatile was given the right to refuse to sell and deliver products under certain conditions in the following Dealer Agreement provision:
6.3 The Company [Versatile] may refuse to sell or deliver Products to the Dealer [Van’s Tractor] at any time under the terms of payment, herein set forth, or in any purchase order of the Dealer, whether or not previously accepted or approved, when in its opinion the conditions of the current account or financial standing of the Dealer do not warrant further sales or deliveries upon such terms.
*216 Versatile was given the right to refuse to sell products to Van’s Tractor when in its opinion the condition of the current account or financial standing of Van’s Tractor did not warrant further sales.
In addition the Dealer Agreement contains extensive termination provisions in part 21, which in pertinent part provide:
21.1 This Agreement shall continue in effect until terminated as hereinafter provided. This Agreement may be terminated immediately, at the Company’s [Versatile] option, by giving notice by hand, verified telex or telecopier or by registered mail, postage prepaid to the last known address of the Dealer [Van’s Tractor] at any time after the occurrence of any of the following events:
(d) default of any indebtedness of the Dealer to the Company...
(g) if the Company, in good faith, believes that the prospect of payment or performance hereunder is impaired or that the Products or any part thereof are in danger of being lost, damaged or confiscated.
Substantial rights in the Dealer Agreement were transferred by Versatile to Ford New Holland under the Assignment and Assumption Agreement dated July 10, 1987 (herein called Assignment), which in pertinent part provided:
2. Assignment.
(a) VFEC [Versatile] hereby irrevocably assigns, transfers, sells and conveys to NH [Ford New Holland] all of VFEC’s right, title and interest in and to the U.S. Dealer Agreements [specifically including the Versatile-Van’s Tractor Agreement] to the extent the same relates to the Business [all business carried on by Versatile in the distribution and sale of equipment but excluding the Noble Business], including all right of action and all other rights accruing to VFEC thereunder.
(b) For greater clarity and certainty, it is hereby agreed that VFEC shall retain unto itself all of its right, title and interest in the U.S. Dealer Agreements to the extent same relate to the Noble Business.
3.Assumption. NH [Ford New Holland] hereby accepts the assignment of VFEC’s [Versatile’s] right, title and interest in and to the U.S. Dealer Agreements as above provided, and agrees to observe, perform and discharge the covenants and obligations of VFEC related to the Business under the U.S. Dealer Agreements *217 in accordance with their respective terms to the extent that the same shall arise or accrue at any time after the date hereof and relate to periods commencing after the date hereof.
The Assignment irrevocably transferred from Versatile to Ford New Holland all of Versatile’s right, title and interest in the Dealer Agreement with Van’s Tractor as it related to Versatile equipment, but specifically excluded all Noble Business which was defined as the business carried on by Versatile Noble Cultivators Company. Under the Assumption portion of the Assignment, Ford New Holland accepted the assignment from Versatile and agreed to observe, perform and discharge all of the obligations under the Assignment in accordance with its terms. I emphasize that no consent on the part of Van’s Tractor or any other dealer was required under the terms of the Assignment. It is critical to note that there are no terms of the Dealer Agreement or of the Assignment, or of any other instrument in writing which requires consent by Van’s Tractor to the assignment by Versatile to Ford New Holland. Nothing in the written record supports a conclusion that the Assignment from Versatile to Ford New Holland modified the contract relationship under the Dealer Agreement with Van’s Tractor so far as all Versatile equipment was concerned.
The majority points out that Ford New Holland contended that the application of §§ 30-11-802 and 803, MCA, is a prohibited retroactive application because the statutes were enacted in 1985, two years after the contract between Versatile and Van’s Tractor was executed. These code provisions in pertinent part provide:
30-11-802. Cancellation and alteration of dealerships. No grantor may, directly or indirectly, terminate, cancel, fail to renew, or substantially change the competitive circumstances of a dealership agreement without good cause. The burden of proving good cause is on the grantor.
30-11-803. Notice of termination or change in dealership. (1)... a grantor shall provide a dealer at least 90 days’ prior written notice by certified mail of termination, cancellation, nonrenewal, or substantial change in competitive circumstances. The notice must state all the reasons for termination, cancellation, nonrenewal, or substantial change in competitive circumstances and must provide that the dealer has 60 days from the receipt of the notice in which to rectify any claimed deficiency. If the deficiency is rectified within 60 days, the notice is void.
*218 Section 802 is construed by the majority opinion as limiting the power of Ford New Holland to terminate, cancel or substantially change the competitive circumstances of the Dealer Agreement without good cause and, placed the burden of proving such good cause on Ford New Holland. In a similar manner, the majority opinion concludes that under § 803, notice of termination or change in dealership is required, and if a deficiency specified in a notice is corrected in accordance with the statute, then the notice is void. I emphasize the clear contradiction between these code section provisions and the rights given to the parties under the terms of the Dealer Agreement itself. The majority opinion has concluded that the Dealer Agreement provisions may be totally disregarded because of the controlling effect of the subsequently enacted statutes. Clearly these code sections directly contradict the rights given to the parties under the Dealer Agreement.
In Part I of the majority opinion, the key conclusion is stated as follows:
We conclude that the 1987 sale of assets by Versatile to Ford New Holland and others significantly altered the dealership relationship and contract.
I disagree with the foregoing conclusions. The Assignment of the Dealer Agreement is not prohibited or restricted under such Dealer Agreement and by its terms does not in any way result in a new dealership relationship or contract.
In Part I of the majority opinion, the statement is made that the Assignment was more than just a product change as Ford New Holland would have us believe. The majority refers to the District Court finding and then states: “This refers to Ford New Holland’s refusal to be bound by any obligations of Versatile in relation to the Noble plow line.” The record does not support that statement. As previously quoted, the Assignment from Versatile to Ford New Holland transferred all title and interest in U.S. dealer agreements, including the Versatile-Van’s Tractor Agreement, to the extent that the contract related to the business carried on by Versatile in the distribution and sale of equipment “but excluding the Noble business.” It is not appropriate to suggest that Ford New Holland in some manner refused to be bound by the obligations of Versatile in relation to the Noble plow line. The record clearly establishes that Versatile transferred all of its interest in the Dealer Agreements regarding the Noble plow line to a different entity. Again, I find that such division *219 by Versatile of its interest in the Versatile-Van’s Tractor Agreement so that it transferred one portion to Ford New Holland and the other portion to another party is not prohibited under the Dealer Agreement.
The majority concluded that the 1987 sale of assets to Ford New Holland significantly altered the dealership relationship and contract. As authority for that conclusion, the majority relies on Kealey Pharmacy & Home Care Serv. v. Walgreen Co., a decision of a federal court in the western district of Wisconsin, which concluded that a non-retroactive statute applies to contracts which have been significantly altered after the effective date of the statute. That is very limited case authority for the guidance of this Court. As previously pointed out, the record contains nothing which demonstrates that Van’s Tractor was required to execute an agreement of any kind as a result of the Assignment by Versatile to Ford New Holland. Apparently the majority concludes that something in the nature of a “new contract” was executed between Ford New Holland and Van’s Tractor so that subsequently enacted statutes apply. No “new contract” of any type was executed between Ford New Holland and Van’s Tractor. The record contains nothing which establishes something in the nature of a “new contract.” As a result I do not know of a proper legal basis for the conclusion of the majority.
I conclude there was not a significant alteration of the rights and responsibilities of Van’s Tractor as a result of the Assignment. So far as the questions raised by Van’s Tractor regarding credit for returned Noble parts, that is an issue which required determination under the existing contract. There is nothing in that transaction which requires a conclusion that a “new contract” was executed. I can find no legal basis upon which to conclude that §§ 30-11-802 and 803, MCA, should be applied to the Dealer Agreement and Assignment to Ford New Holland. I would reverse on that issue.
The majority opinion refers to the application for a dealership submitted by Van’s Tractor to Ford New Holland. Again I believe this to be irrelevant as in fact no new agreement was executed.
Issue II addresses whether the District Court erred in concluding that Ford New Holland violated §§ 30-11-802 and 803, MCA. When enacted in 1985, these code sections were not made retroactive. Article II, Section 31 of the Montana Constitution provides:
Ex post facto, obligation of contracts, and irrevocable privileges. No ex post facto law nor any law impairing the obligation of contracts, or making any irrevocable grant of special *220 privileges, franchises, or immunities, shall be passed by the legislature.
The Constitution prohibits the enactment by the legislature of a law impairing the obligation of contracts. I conclude the majority’s interpretation has impaired the obligation of contracts under the Assignment and the Dealer Agreement. I would reverse on Issue II.
In Issue III the majority opinion concludes that it is not necessary to determine if Ford New Holland breached the implied covenant of good faith and fair dealing. I would conclude that this is the only issue which should be considered on retrial.
I would reverse and remand for new trial on the issue of the breach of the implied covenant of good faith and fair dealing.
CHIEF JUSTICE TURNAGE and JUSTICE GRAY concur in the foregoing dissent.